UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:11-CR-00013-R

UNITED STATES OF AMERICA      PLAINTIFF

v.

WAAD RAMADAN ALWAN, et al.      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Waad Ramadan Alwan's motion to dismiss counts one and two of the criminal indictment (DN 40). The Government has responded (DN 42) and Defendant has replied (DN 44). This matter is now ripe for adjudication. For the reasons that follow, Defendant's motion is DENIED.

## BACKGROUND

The relevant facts for this motion are as follows.[1] Alwan, an Iraqi national, is alleged to have participated in the insurgency in Iraq between 2003 and 2006. He was arrested in Bowling Green, Kentucky, following a lengthy investigation by federal law enforcement officials into his alleged domestic terrorism activities. As part of a 23-count indictment, Alwan has been charged for his activities in Iraq. Specifically, count one says he engaged in a conspiracy to commit the murder of United States nationals in Iraq between 2003 and 2006, in violation of 18 U.S.C. § 2332(b)(2). Count two further claims Alwan engaged in a conspiracy to use weapons of mass

---

[1] Alwan's supposed involvement with the insurgency during the conflict in Iraq, his journey to the United States, and his subsequent arrest is a long and complicated tale. For brevity's sake, and because the motion involves a matter of law, the Court will not delve into the narrative underlying this matter.

1

destruction (improvised explosive devises) to murder United States nationals, in violation of 18 U.S.C. § 2332a(a)(1).

Alwan has moved to dismiss these counts of the indictment for reasons related to the Geneva Convention Relative to the Protection of Civil Persons in Time of War, Aug. 12, 1949, 6 U.S.T. 516, 75 U.N.T.S. 287 ("Geneva Civilian Convention"), to which the United States and Iraq are signatories. Alwan says the Court lacks jurisdiction to adjudicate these claims because in enacting 18 U.S.C. §§ 2332(b)(2) and 2332a(a)(1), Congress did not intend to abrogate Article 64 of the Geneva Civilian Convention which requires the application of the Iraqi criminal code to his alleged actions.[2] The Government responds that Alwan's objections are misguided because these statutes apply to all instances of extraterritorial terrorism, no matter where it occurs, and because the United States has not abandoned it rights to concurrent jurisdiction under the Geneva Civilian Convention.

## STANDARD

The federal rules of criminal procedure allow a party to file a pretrial motion to dismiss on "any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). Rule 12(b) motions are typically raised when confronting matters of law, such as "former jeopardy, former conviction, former acquittal, statute of limitations, immunity and lack of jurisdiction." *United States v. Craft*, 105 F.3d 1123, 1126 (6th

---

[2] The Government expends much of its response explaining why Alwan may not assert an individual right of immunity under the Geneva Civilian Convention. *See* Pl. Resp. pp. 5-9, DN 42 at 5-9. In his reply, Alwan concedes this point, focusing instead on whether Congress intended the "extraterritorial application of [18 U.S.C. §§ 2332(b)(2) and 2332a(a)(1)] in foreign countries under United States miliary occupation." Def. Reply p. 1, DN 44 at 1. Accordingly, the Court does not discuss whether Alwan has individual rights under the Geneva Civilian Convention.

Cir. 1997) (quoting *United States v. Smith*, 866 F.2d 1092, 1096 n. 3 (9th Cir. 1989)). Still, the district court is permitted to make "preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion as long as the court's findings on the motion do not invade the province of the jury." *Id*. (citing *United States v. Jones*, 542 F.2d 661, 664–65 (6th Cir. 1976)). Where a defendant challenges the sufficiency of the indictment or the court's jurisdiction, such a motion must be made before trial. Fed. R. Crim. P. 12(b)(3)(B).

## ANALYSIS

Alwan's objection revolves around the connection between Article 64 of the Geneva Civilian Convention, 18 U.S.C. §§ 2332(b)(2) and 2332a(a)(1), and whether the former prevents a criminal indictment for terrorist activities performed in a country under United States military occupation. He argues that from the time of the invasion on March 20, 2003, until sovereignty reverted to Iraq following the election of the Iraqi National Assembly on May 3, 2005, the United States was an occupying power in Iraq as envisioned by the Geneva Civilian Convention. Article 64 of this convention is as follows:

> *The penal laws of the occupied territory shall remain in force*, with the exception that they may be repealed or suspended by the Occupying Power in cases where they constitute a threat to its security or an obstacle to the application of the present Convention. Subject to the latter consideration and to the necessity for ensuring the effective administration of justice, the tribunals of the occupied territory shall continue to function in respect of all offenses covered by the said laws.
>
> The Occupying Power may, however, subject the population of the occupied territory to provisions which are essential to enable the Occupying Power to fulfil its obligations under the present Convention, to maintain the orderly government of the territory, and to ensure the security of the Occupying Power, of the members and property of the occupying forces or administration, and likewise of the establishments and lines of communication used by them.

Geneva Civilian Convention, Art. 64, 6 U.S.T. at 3558, 75 U.N.T.S. at 328 (emphasis added). Alwan argues that to apply 18 U.S.C. §§ 2332(b)(2) and 2332a(a)(1) when the Iraqi code was still in effect would be to implicitly overrule the United States' treaty obligations under Article 64, and therefore Congress could never have intended to apply these statutes to foreign countries under United States military occupation. For that reason, he asserts this Court is without jurisdiction to hear these charges.

Though this motion incorporates a flair of international treaty law, ultimately the legal question is one of statutory interpretation: are sections 2332 and 2332a of the federal criminal code intended to apply to foreign nations where the armed forces are currently engaged in conflict? The Court will first review the statutes at issue before employing the tools for their interpretation.

Section 2332 was first enacted with the Omnibus Diplomatic Security and Antiterrorism Act of 1986, Pub. L. No. 99-399, Title 12, § 1202(a), 100 Stat 853 (1986). Subsection (b) criminalizes "attempts to kill, or . . . conspirac[ies] to kill, a national of the United States" by individuals outside of the United States. 18 U.S.C. § 2332(b). The statute contains but one limitation, in subsection (d), which forestalls prosecution until a written certification is issued by "the Attorney General or the highest ranking subordinate of the Attorney General" affirming that the offense "was intended to coerce, intimidate, or retaliate against a government or a civilian population." *Id.* § 2332(d).

Section 2332a was enacted in 1994 under the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 60023(a), 108 Stat. 1980 (1994), and amended to its current form in 1996 along with the enactment of the Antiterrorism and Effective Death

4

Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). It prohibits the use, threat of use, the attempted use, or a conspiracy to use a weapon of mass destruction "against a national of the United States while he or she is outside of the United States." 18 U.S.C. § 2332a(a)(1). While the subsection requires a charged defendant to be acting "without lawful authority," this passage has been interpreted by at least one court as merely an affirmative defense to be raised at trial. *See United States v. Wise*, 221 F.3d 140, 148-50 (5th Cir. 2000). In any event, it is not a jurisdictional limitation on section 2332a's application.

The Supreme Court in *United States v. Wells*, 519 U.S. 482 (1997) set out a three-step process for the interpretation of statutes: "first, a natural reading of the full text; second, the common-law meaning of the statutory terms; and finally, consideration of the statutory and legislative history for guidance." *U.S. ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Grp., Inc.*, 400 F.3d 428, 442 (6th Cir. 2005) (citing *Wells*, 519 U.S. at 490-92). "If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning." *Caminetti v. United States*, 242 U.S. 470, 485 (1917). In its attempts to curb the interpretation of congressional intent and motives by lower courts, the Supreme Court has repeatedly counseled "'that a legislature says in a statute what it means and means in a statute what it says there.'" *Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 296 (2006) (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). "When [a court finds] the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances." *Rubin v. United States*, 449 U.S. 424, 430 (1981).

"The starting point is the language employed by Congress." *Chapman v. Higbee Co.*, 319 F.3d 825, 829 (6th Cir. 2003) ( quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995); *see Wells*, 519 U.S. at 489-90 (when analyzing statute, courts should "begin with the text" (citing *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 739 (1989))). The statutes here are relatively straightforward in their jurisdictional reach. Although their application is limited or prefaced in some respects, neither statute hints that district courts lack jurisdiction over acts undertaken in areas occupied by the United States military. In fact, section 2332 explicitly states that it criminalizes extraterritorial murders and conspiracies to murder, but does not restrict itself by way of geographic region or conflicts within those regions. The faces of the statutes are clear: their applications are not checked by the presence of an armed conflict involving the United States miliary. Since the judicial inquiry is now complete, Alwan's objections are without merit.

The legislative history for these statutes provides further support for the Government's reading of sections 2332 and 2332a. During its enactment, the Conference Committee Report set forth the need to expand the existing law prohibiting extraterritorial terrorism on "high ranking U.S. officials, diplomats, and law enforcement officers." H.R. Rep. No. 99-783, at 87 (1986) (Conf. Rep.), reprinted in 1986 U.S.C.C.A.N. 1926, 1960. The committee said the addition of section 2332 would "extend coverage to any terrorist murder or manslaughter of and serious physical assault on any U.S. National." *Id*. It continued, listing what crimes would not be covered by the new statute and who would ensure the provision was used for its intended purpose:

> The committee of conference does not intend that chapter 113A reach nonterrorist violence inflicted upon American victims. Simple barroom brawls or normal street

> crime, for example, are not intended to be covered by this provision. To ensure that this statute is used only for its intended purpose, the conference substitute requires that the Attorney General certify that in his judgment such offense was intended to coerce, intimidate, or retaliate against a government or civilian population.

*Id*. This report's language is noteworthy for two reasons. First, section 2332(a) reaches "any" murder or manslaughter on "any" American; such broad, unqualified language permits the use of the statute in all foreign arenas, irrespective of an ongoing military conflict. In addition, while the report establishes a lower boundary on less-serious infractions, there are no other limitations placed on section 2332's prohibitions. This Court may not infer an additional requirement from a statute which the legislative history declines to discuss. *See Standefer v. United States*, 447 U.S. 10, 20 n. 12 (1980) ("[A]n omission in the legislative history [does not] nullify the plain meaning of a statute . . . .")

Moreover, the Supreme Court has rejected the statutory construction rule for which Alwan advocates. In much of his motion, he contends Congress did not mean for "the scope of 18 U.S.C. §§ 2332(b)(2) and 2332a(a)(1) to extend to the treaty bound region of belligerent military occupation. Nothing in the legislative history suggests otherwise." Pl. Mot. p. 7, DN 40 at 7. To summarize, Alwan asserts that if the statute's language or legislative history does not expressly condone or contemplate a particular use, then that action may not be pursued. In *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 591-92 (1980), the Supreme Court, in a matter of statutory construction, considered a litigant's reliance on what Congress and its committee did not say about a statutory provision and its amendments. *Id*. at 592-93. Writing for the majority, Justice Stewart said:

> [I]t would be a strange canon of statutory construction that would require Congress to state in committee reports or elsewhere in its deliberations that which is obvious on the

7

> face of a statute. In ascertaining the meaning of a statute, a court cannot, in the manner of Sherlock Holmes, pursue the theory of the dog that did not bark.

*Id.* at 593 (footnote omitted). Although the legislative history is silent on whether the intended purpose of these statutes was to prosecute defendants such as Alwan, *Harrison* indicates the Court cannot accept its absence as proof for his position.

Of further note, other courts have reviewed and dismissed objections by criminal defendants as to the extraterritorial application of these statutes. Section 2332's unmistakable references to extraterritoriality and foreign nationals have led courts to reject claims that it does not criminalize violent acts on foreign soil. *See United States v. Yousef*, 327 F.3d 56, 86-87 (2d Cir. 2003); *United States v. Laden*, 92 F. Supp. 2d 189, 199 (S.D.N.Y. 2000) rev'd on other grounds, *United States v. Gatlin*, 216 F.3d 207, 212 n. 6 (2d Cir. 2000). In *United States v. Yousef*, 927 F. Supp. 673, 681-82 (S.D.N.Y. 1996), Judge Kevin Duffy reviewed whether section 2332a could be used to criminalize a conspiracy by foreign nationals to use weapons of mass destruction to bomb commercial airliners operating overseas. He rejected the defendant's motion to dismiss, opining that "[t]he exercise of extraterritorial jurisdiction in this case is reasonable, since the crimes charged have a 'substantial, direct, and foreseeable effect' in the United States . . . ." *Id.* at 682 (quoting *United States v. Javino*, 960 F.2d 1137, 1143 (2d Cir. 1992)).

This precedent highlights the consensus amongst courts that both sections 2332 and 2332a apply to acts of terrorism directed at Americans in foreign countries. The Court has not encountered any precedent construing portions of these statutes to apply to some foreign locations and not others. On the contrary, the breadth of the language used in each paints quite the opposite picture. *See* 18 U.S.C. § 2332(b) ("*Whoever* outside the United States . . . .")

(emphasis added); 18 U.S.C. § 2332a(1) ("... against a national of the United State while such national is outside the Untied States."). Even accepting Alwan's proposition that these statutes were not specifically written to criminalize violence arising during the occupation of a foreign country, the Court agrees that "the ambiguity of terrorism as a legal concept and the relative nature of politically motivated violence as a whole means that acts of insurgent violence in Iraq can be interpreted as falling within the broad terms of U.S. anti-terrorism law." Nathan A. Canestaro, *"Small Wars" and the Law: Options for Prosecuting the Insurgents in Iraq*, 43 Colum. J. Transnat'l L. 73, 116-19 (2004) (discussing the application of section 2332 to insurgents fighting in Iraq).

Finally, section 2332 and 2332a are not in conflict with Article 64 because the Geneva Civilian Convention does not alter or negate the principals of concurrent jurisdiction between foreign tribunals and the United States judicial system. Courts have consistently recognized the possibility of concurrent jurisdiction in courts of different nations for a single course of conduct. *See e.g.*, *United States v. Rashed*, 234 F.3d 1280, 1281-82 (D.C. Cir. 2000) (sequential prosecutions of a criminal defendant in a foreign country and the United States did not violate Double Jeopardy Clause); *United States v. Rezaq*, 134 F.3d 1121, 1128 (D.C. Cir. 1998) (same); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 952 (D.C. Cir. 1984) ("There is no principle of international law which abolishes concurrent jurisdiction. Since prescriptive jurisdiction is based on well recognized state contacts with controversies, the reality of our interlocked international economic network guarantees that overlapping, concurrent jurisdiction will often be present." (footnotes omitted)); *United States v. First Nat. City Bank*, 396 F.2d 897, 901 (2d Cir. 1968) (recognizing that multiple international states may exercise

9

jurisdiction over a person with respect to a single course of conduct). In fact, a closer review of the United States Constitution and The Restatement (Third) or Foreign Relations reveals that neither forbids multiple nations from having overlapping jurisdiction for the same event. *Cf.* Restatement (Third) of Foreign Relations Law § 403 (1987).

The express language of Article 64 mandates that the penal laws of Iraq remain in effect during a military occupation and that if those laws are changed or supplemented by the United States, citizens be given notice. Such requirements do not change the general tenets of concurrent jurisdiction. The present legal climate adopts the Government's view that sections 2332 and 2332a may be extended to criminalize insurgent and terrorist activities in other countries even though those same acts may be punishable in Iraqi courts as well. The Court has not located, nor has Alwan provided, a segment of the Geneva Civilian Convention or another treaty that precludes the United States from applying the extraterritorial portions of its criminal code to the citizenry of an occupied country. These criminal charges may exist alongside the Geneva Civilian Convention without subverting its protections.

## CONCLUSION

The rationale for this motion is unavailing. The plain language of the statutes and their legislative histories indicate they are unrestricted in their extraterritorial application. Alwan's contention that they do not apply to areas where there is a current military operation by the United States armed forces is therefore improper. Next, the Geneva Civilian Convention does not impact the United States's right under international law to maintain concurrent jurisdiction over certain criminal acts against its citizens in foreign countries. Accordingly, that Alwan may

be subject to the Iraqi criminal code for his alleged involvement with the insurgency does not preclude the overlapping jurisdiction of 18 U.S.C. §§ 2332(b)(2) and 2332a(a)(1).

For these reasons, IT IS HEREBY ORDERED that Defendant's motion to dismiss counts one and two of the indictment (DN 40) is hereby DENIED.